## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DEMETRIS S. ALLEN,

      Petitioner,

v.                                                      Case No. 3:19-cv-320-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

### I.   **Status**

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 4). He challenges a state court (Duval County, Florida) judgment of conviction for two counts of attempted first degree murder and one count of shooting or throwing a deadly missile into a dwelling. He is serving life imprisonment. Respondents filed a Response (Doc. 10) with exhibits (Docs. 10-1 to 10-7, S-11; "Resp. Ex."). Petitioner filed a Notice indicating that he would not file a reply, but would instead rely on his allegations and claims as stated in the Amended Petition (Doc. 13). This case is ripe for review.

## II.   <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's
> decision." Richter, 562 U.S. at 101 (internal quotation
> marks omitted). "It bears repeating that even a strong
> case for relief does not mean the state court's contrary
> conclusion was unreasonable." Id. [at 102] (citing
> Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The
> Supreme Court has repeatedly instructed lower federal
> courts that an unreasonable application of law requires
> more than mere error or even clear error. See, e.g.,
> Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer,
> 538 U.S. at 75 ("The gloss of clear error fails to give
> proper deference to state courts by conflating error
> (even clear error) with unreasonableness."); Williams v.

> Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v.

> Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, 501 U.S. at 747-48; Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A

> prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

continued incarceration of one who is actually innocent, otherwise would result.

The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's

performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment

violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

### III.   Analysis

#### A. Grounds One, Two, Three, Four, Five, Seven, Eight, Nine, Ten, Eleven, and Twelve

In these eleven grounds, Petitioner raises various ineffective assistance of trial counsel claims. Specifically, he argues that counsel was ineffective for:

- Ground One: failing "to investigate and expose false information used in the affidavit for arrest," Doc. 4 at 16;

- Ground Two: failing "to investigate and challenge unconstitutionally suggestive photo-lineup," id. at 18;

- Ground Three: failing to "move to suppress all evidence obtained and used" in violation of Miranda v. Arizona, 384 U.S. 436 (1966), Doc. 4 at 23;

- Ground Four: failing "to challenge outrageous misconduct on the part of the State, to secure appellate review," in that "the State was in possession of[] and used impeachment evidence to expose potential juror bias to strike jurors," but did not provide that evidence to the defense, id. at 26;

- Ground Five: failing "to ensure [Petitioner's] right to [a] speedy trial" was protected, id. at 26;

- Ground Seven: failing "to expose and challenge the prosecutor's selective and vindictive prosecution of Petitioner," id. at 32;

- Ground Eight: "fail[ing] to challenge incorrect peremptory and cause challenges and other outside influences, which resulted in [Petitioner] not receiving the jury of his choice (nor the jury that should have been lawfully impaneled)," id. at 33;

- Ground Nine: failing "to challenge the Prosecution's solic[i]ting testimony consistent with misrepresentations of material facts," and the fact that there was "no physical evidence pointing to the Petitioner" to secure a conviction, id. at 38;

- Ground Ten: failing "to challenge the prosecutor's failure to disclose material impeachment evidence about the state's informant (witness)," in violation of Giglio v. United States, 405 U.S. 150 (1972), id. at 40;

- Ground Eleven: failing to ensure that the defense was permitted to speak last in closing arguments, id. at 41; and

- Ground Twelve: failing "to request a nullification instruction when the court on numerous occasions misadvised the jurors on the laws to be applied," id. at 42.

Petitioner presented each of these claims in his amended Florida Rule of Criminal Procedure 3.850 motion. See Resp. Ex. I at 73-100.[1] The postconviction court denied the claims as untimely:

> The Court notes that "the time limitations for commencing postconviction proceedings pursuant to Florida Rule of Criminal Procedure 3.850 begin to run with the finality of the judgment and sentence, which is triggered when there has been a direct appeal by the issuance of the appellate court's mandate." Pitzer v. Bretey, 95 So. 3d 1005, 1006 (Fla. 2d DCA 2012). "A trial court may properly deny an amended rule 3.850 motion as untimely when it raises new claims and is filed outside of the two-year time period. The two-year

---

[1] The claims raised in Petitioner's Amended Petition filed in this case are identical to the claims raised in his amended Rule 3.850 motion filed in state court.

time period, however, does not preclude the enlargement of issues which were raised in a timely filed motion for postconviction relief." <u>Lanier v. State</u>, 826 So. 2d 460,461 (Fla. 1st DCA 2002) (internal citations omitted).

In the instant case, Defendant's judgment and sentence became final upon the issuance of the appellate court's Mandate on April 17, 2012, giving Defendant until on or about April 17, 2014, to timely file a rule 3.850 motion. Although Defendant's September 26, 2012, Motion is timely filed, his April 27, 2017, Amended Motion is untimely filed well beyond the expiration of the limitations period of rule 3.850. As such, any new claims raised in Defendant's Amended Motion warrant denial as untimely, and only claims that actually amend or enlarge a timely raised claim will be deemed timely. <u>Lanier</u>, 826 So. 2d 460.

After review of Defendant's Amended Motion and the twelve enumerated allegations raised therein, the Court finds that only the allegations in ground six may be deemed an enlargement of a timely-raised claim, and the remainder of Defendant's allegations in his Amended Motion are new claims that are untimely filed. Specifically, ground six of Defendant's Amended Motion amends the claim in ground one of his original, timely-filed Motion. As such, the Court will address ground six of Defendant's Amended Motion for Post-Conviction Relief, and **grounds one, two, three, four, five, seven, eight, nine, ten, eleven, and twelve of Defendant's Amended Motion are denied as untimely**.

Resp. Ex. I at 116-17 (emphasis in original). Petitioner appealed the denial of his amended Rule 3.850 motion, and the First District Court of Appeal per curiam affirmed the denial without a written opinion. <u>See</u> Resp. Ex. J.

The Court finds that the state court's application of the procedural bar based on untimeliness is an independent and adequate state law ground. Thus, these claims are procedurally barred on federal habeas review. See Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999) ("[W]here the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, . . . the federal court [must] respect the state court's decision.").

To overcome the procedural bar, Petitioner must show cause and prejudice or a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). Petitioner has failed to do so. Indeed, he has failed to set forth any argument relating to the procedural bar of these claims. Thus, he has failed to show either cause or prejudice or demonstrate that a fundamental miscarriage of justice will result if the Court does not

consider the claims.[2] Therefore, Grounds One, Two, Three, Four, Five, Seven, Eight, Nine, Ten, Eleven, and Twelve are due to be denied.

### B. Ground Six

Petitioner argues that his trial counsel was ineffective for failing to investigate and call witnesses. See Doc. 4 at 27-32. He specifically lists three witnesses (Gloria Allen, India Watson, Corey Norman) who he claims were available to testify and would confirm that he was not at the scene of the shooting. Id. at 29-30. Petitioner raised this claim as ground six in his amended Rule 3.850 motion. See Resp. Ex. I at 84-89. The state postconviction court summarized Petitioner's allegations in detail, identified Strickland as the controlling law on ineffective assistance of counsel claims, and denied the claim as follows:

> In the instant case, after extensive review of the record, this Court finds that defense counsel went to great lengths to let the record reflect that, although Defendant had provided counsel with numerous potential witnesses, investigation into those potential witnesses led to a determination — agreed to by Defendant on the record — that those witnesses would not be beneficial and would not be called to testify.

---

[2] In addition to arguing that Petitioner has failed to show cause or prejudice, or a fundamental miscarriage of justice, Respondents also argue that Petitioner cannot avail himself of the exception set forth in Martinez because his claims are not substantial. See Doc. 10 at 24-25, 29-40, 43-46, 49-52, 55-58, 74-78, 81-87, 89-94, 96-99, 102-03, 106-07. Although Petitioner was afforded an opportunity to reply to Respondents' arguments, Petitioner declined to do so. See Doc. 13. Thus, because Petitioner has failed to argue that Martinez applies, the Court does not address Respondents' arguments in that regard.

Specifically, the record reflects that, prior to jury selection, defense counsel informed the trial court as follows:

> DEF. COUNSEL: Your Honor, we've been discussing, in talking with Mr. Demetris Allen, I was given 15 witnesses. I've also gotten an additional one. I've spoken to — we've decided, and I'm going to make sure that Mr. Allen understands, that we're not going to call those witnesses, but there's one in custody that my investigator's presently trying to speak with, and at this time in talking with him I don't know if we're calling him or not. I will find out before-
>
> THE COURT: I'll just read the name along with the others as a potential. What's the name?
>
> DEF. COUNSEL: That's a Mr. Newman. Corey Newman, Your Honor.
>
> THE COURT: Corey. I will just read that name along with the others just in case.
>
> DEF. COUNSEL: Thank you, Your Honor.
>
> THE COURT: Okay. And you're sure about the others. There's no — no other names that I may-
>
> DEF. COUNSEL: No. That's the only one.
>
> THE COURT: Okay.

(Ex. F, p. 7). Two days later, just before trial commenced, defense counsel informed the trial court about her investigation into Defendant's potential witnesses and the ultimate determination that these

witnesses would not be beneficial to Defendant and would not be called to testify, and Defendant affirmed this strategic determination on the record:

> DEF. COUNSEL: The defense has something to put on the record.

> THE COURT: Okay.

> DEF. COUNSEL: Mr. Allen and I had discussions about certain defense witnesses, people that he wanted to call, people that he did not want to call. Defense counsel was able to locate the different places that Mr. Allen wanted us to go, and the different witnesses, I believe it was like 15, and then there were another couple of witnesses. On Monday during jury selection, my investigator came in and provided me a file with detailed information regarding those witnesses. I discussed all of that with Mr. Allen, and Mr. Allen agreed that the individuals that he mentioned would not be good defense witnesses, and agreed to not call them during the defense case.

> THE COURT: Okay. Mr. Allen, that's all correct.

> DEFENDANT: (Defendant nods head.)

> THE COURT: You've agreed that it would not be good for you to call those witnesses?

> DEFENDANT: Yes.

> THE COURT: Okay. And Ms. Lance, probably more importantly, you did locate those people and either you or your investigator spoke with them?

16

DEF. COUNSEL: Your Honor, we did not locate all 15. We located a sizable amount, and spoke with them. The conversation that I had did not lead me to believe that they were useful. The last two that I had, closer to trial date, we were able to locate, create a file on, get history of their background, all of that information, and after discussing that with my client, we realized that they were not good defense witnesses.

THE COURT: Okay. So, it's your opinion that none of those witnesses you talked to would be good defense witnesses.

DEF. COUNSEL: Yes, Your Honor. And just for the record, I went through, I believe, about half the witnesses, discussed with him the information that they provide, conferred with him about what the other witnesses might provide, and based on that, if they were similar to what we had already discussed, we made a determination that it would not be advisable to contact any of those additional witnesses.

THE COURT: Because again, they would not be helpful.

DEF. COUNSEL: Yes, Your Honor.

(Ex. G, pp. 20-22). After the State rested its case and the trial court denied the defense's motion for judgment of acquittal, the record reflects that defense counsel again conferred with Defendant and they then maintained the strategic determination that no defense witnesses would be called to testify:

17

> THE COURT: Ms. Lance, do you have any testimony, other than possibly Mr. Allen, do you have any other witnesses or evidence to present?
>
> DEF. COUNSEL: Your Honor, may I ask briefly?
>
> THE COURT: Yes.
>
> (Counsel conferring with client.)
>
> DEF. COUNSEL: Your Honor, I have spoken to Mr. Allen. For the reasons that are already on the record, we are not calling any witnesses.

(Ex. H, p. 217). As the record reflects that the decision not to call witnesses was a strategic one, agreed to by Defendant on the record and reasonable under the circumstances, the record refutes Defendant's claim, and counsel cannot be deemed deficient as alleged. See Kelley v. State, 109 So. 3d 811 (Fla. 1st DCA 2013); Mclndoo v. State, 98 So. 3d 640 (Fla. 4th DCA 2012).

Although such a finding may end the Court's analysis of Defendant's claim,[] the Court notes additionally that a review of the record reflects that Defendant also cannot demonstrate prejudice on his claim. Specifically, even if the three named potential witnesses had testified at trial to the information Defendant alleges in his Motion they would have testified to if called to do so, this Court does not find there to be a reasonable probability that such testimony would have affected the outcome of the trial. In making this finding, the Court notes that the testimony presented at trial included the following: Leading up to the night of the shooting, there had been a history of physical fights between two groups of women, with Jade Little, Keyona Whitfield, and J'Nay Brinson on one side, and Idreka Johnson, India

18

Watson, and a girl named Mercedes on the other. (Ex. G, pp. 52-55, 81-82, 98, 110-111). Jade Little, Keyona Whitfield, and J'Nay Brinson were among eleven people inside a house on the night of October 25, 2010, and Idreka Johnson and India Watson were outside the house "provoking" Keyona Whitfield and others to come outside the house to fight, but that no one did. (Ex. G, pp. 52-55, 81-85, 98-101, 110-111, 141-142, 151-154). A man—identified as Defendant by five eyewitnesses—approached and joined the women outside the house, paced back and forth, then pulled out a gun and fired at and into the house a number of times. (Ex. G, pp. 54-62, 67-69, 81-91, 101-107, 110-117, 154-161, 193-200; Ex. H, pp. 205-209, 212-214). Two of the eleven individuals inside the house, including, Jade Little, were shot. (Ex. G, pp. 47, 60-67, 103-104, 141-145).

Defendant alleges in his Motion that potential witness Corey Norman would have testified that he was with Defendant at a club all night until his aunt—potential witness Gloria Allen—picked Defendant up, which Defendant contends "would have provided an accountability of the [Defendant's] presence at the club during the time of the shooting." Defendant contends that Corey Norman and Gloria Allen also would have testified to their knowledge of the relationship between Defendant and Jade Little "and her animosity towards" him, which Defendant contends would have shown the jury "reasons why Ms. Little made [sic] have wished to misidentify [Defendant] and influence others testimony." Such testimony was necessary, as "everyone else's identification of 'Boo' as the shooter was influenced by Jade Little in some form or fashion." Defendant alleges that potential witness India Watson would have testified that she "was not present at the scene of the shooting and had not spoken with [Defendant] at all that day," which Defendant contends "would have cast doubt as to the certainty of the State's witnesses recollection of events if not totally exposed it for the fabrication it was," thereby creating reasonable doubt as to Defendant's guilt.

The Court notes that Defendant's allegation is premised on an underlying contention that every witness who identified Defendant as the shooter was influenced by Jade Little, whom he contends misidentified Defendant based on her animosity toward him.

This contention, however, is flawed, as not every witness who identified Defendant could have been influenced by Jade Little. Specifically, the four witnesses who identified Defendant included Danielle Brown—who testified she did not know Defendant previously and had no connection to Jade Little, yet identified Defendant by photo and in court as the man pacing outside the house—and Idreka Johnson—who arguably had a connection to Defendant and was at odds with Jade Little, yet identified Defendant by photo and in court as the shooter that night. (Ex. G, 52-55, 77-91, 98, 110-112, 151-161, 193-194; Ex. H, pp. 212-214). In light of such testimony, the Court finds that additional testimony about Jade Little's alleged animosity toward Defendant would not have affected the outcome of the trial. Additionally, in light of the eyewitness testimony from multiple witnesses placing both Defendant and India Watson at the scene, there is not a reasonable probability that the alleged testimony of Corey Norman and India Watson allegedly stating otherwise would have affected the outcome of the trial. (Ex. G, pp. 55-61, 67-69, 77-91, 98-103, 110-117, 151-161).

In summary, the Court finds that the record reflects that the decision to not call witnesses was a strategic one, reasonable under the circumstances, which Defendant agreed to on the record, and as such, the record conclusively refutes Defendant's allegation that counsel was deficient. Moreover, the Court notes that Defendant cannot demonstrate prejudice as a result of counsel's alleged deficiency, as there is not a reasonable probability the outcome of the trial would have been affected had his potential witnesses

testified as alleged. As such, **Defendant warrants no relief on his allegations of ineffective assistance of counsel for failure to investigate and call witnesses, as alleged in ground six of his Amended Motion for Post-Conviction Relief.**

Resp. Ex. I at 124-30 (footnotes omitted; emphasis in original). Petitioner appealed, and the First District Court of Appeal per curiam affirmed the denial without a written opinion. See Resp. Ex. J.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on Ground Six.

Accordingly, it is

**ORDERED**:

1.     The Amended Petition (Doc. 4) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.    If Petitioner appeals the denial of his Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[3]

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of February, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 2/11
c:
Demetris S. Allen, #J44578
Counsel of Record

---

[3] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.